UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                          Case No.  14-31734
        Pierre T. Beaudry,                      Chapter 7
                        Debtor.

---

William K. Harrington
United States Trustee for Region 2,
                        Plaintiff,             Adv. Proc. No. 15-50013
        v.

Pierre T. Beaudry, II,
                        Defendant.

---

**Memorandum-Decision and Order Granting Motion for Summary Judgment**

Before the court is an unopposed motion for summary judgment ("Motion") in which

William K. Harrington, United States Trustee for Region 2 ("Plaintiff") seeks to deny Debtor

Pierre T. Beaudry, II ("Debtor") a discharge under 11 U.S.C. § 727(a)(2), (3) and (4).[1]  For the

reasons discussed below, the court awards Plaintiff summary judgment.

*Jurisdiction*

The court has jurisdiction to decide this adversary proceeding and to enter a final order

pursuant to the provisions of 28 U.S.C. §§ 1334 and 157(b)(2)(J).

*Undisputed Facts*

The court first addresses the unopposed nature of the Motion.  Fed. R. Civ. P. 56(e)

provides that if a party fails to respond to an opposing party's statement of facts, the facts may be

---

[1] Notwithstanding proper service of the Motion upon Debtor and Debtor's counsel, no response
to the Motion was filed.

considered undisputed on a summary judgment motion.[2]  Because Debtor did not address or controvert any of the facts asserted by Plaintiff in its Statement, the court deems those facts admitted.[3]

Debtor is a sophisticated business man who graduated from Hamilton College after spending his first year at Colgate University. (Aff. Ex. 7 at 7). After graduating, he worked for fourteen years selling securities, stocks and bonds, first on Wall Street for Merrill Lynch and then in Syracuse for Paine Webber. (Aff. Ex. 7 at 8-9). For the latter ten of those years, Debtor also managed his personal real estate portfolio, which at its peak consisted of about thirty properties. (Aff. Ex. 7 at 9-10). Following his departure from Paine Webber in 1997, Debtor filed his first of five bankruptcy cases. (Aff. at ¶3).

Since 1997, Debtor has not been gainfully employed. (Aff. Ex. 7 at 10-11). He continued to manage his real estate portfolio through 2009 and thereafter lived on the proceeds of liquidated retirement accounts. (Aff. Ex. 7 at 11 and 47; Aff. Ex. 5 at 4-5). Debtor admits to living on a cash basis due to his fear that any money deposited into a bank account would be garnished by judgment lienors. (Aff. Ex. 7 at 35).

---

[2] Local Bankruptcy Rule 7056-1(c) tracks Federal Rule 56 by similarly providing that the "[c]ourt may deem admitted each material fact set forth in the [Statement]" if not controverted by Debtor.

[3] The submitted record consists of the complaint (Doc. 1), answer (Doc. 4), Motion (Doc. 10) and supporting memorandum of law (Doc. 12), Plaintiff's L.B.R. 7056-1 statement of material facts (Doc. 11) ("7056-1 Stmt."), and the affidavit of Guy A. Van Baalen, Esq., Assistant United States Trustee for the Office of the United States Trustee for Region 2, sworn to on December 10, 2016 with the following exhibits: 1) complaint ("Aff. Ex. 1"); 2) answer ("Aff. Ex. 2"); 3) voluntary petition, schedules and statements (Aff. Ex. 3); 4) c.d. of audio record of 341 meeting ("Aff. Ex. 4"); 5) transcript of 341 meeting ("Aff. Ex. 5"); 6) Order granting Plaintiff's motion to conduct a Rule 2004 examination (Aff. Ex. 5"); 7) Transcript of Rule 2004 examination ("Aff. Ex. 7"); 8) Debtor's 2013 Federal and State tax returns (Aff. Ex. 7"); and 9) information concerning a commercial development project in China (Aff. Ex. 9") ("Aff."). Because Plaintiff could not e-file the audio c.d., which Plaintiff identified as Ex. 4 to his Aff., there is a discrepancy in the numbering of the identified exhibits between CM/ECF and Plaintiff's Aff.

Beginning in January 2014, Debtor provided consulting services to Roger Berman. (Aff. Ex. 7 at 73-74). They had met as undergraduates and reconnected at a college reunion in 2011. (Aff. Ex. 7 at 66-68). Debtor testified that on behalf of Mr. Berman he solicited prospective investors willing to invest $20,000,000 in a commercial development project in China (the "China Venture"). (Aff. Ex. 7 at 72-74). Debtor expected to earn for his services a two to four percent commission on any equity raised. (Aff. Ex. 7 at 77). Debtor testified that he advanced costs of between $1,500 and $2,000 for which he expected reimbursement. (Aff. Ex. 5 at 16). In addition to the China Venture, Debtor also testified to his attempts to find an equity investor for the sale of a Hess oil refinery in the U.S. Virgin Islands (the "Hess Deal"). (Aff. Ex. 7 at 79-81).[4] Neither brokering effort was fruitful. (Aff. Ex. 7 at 82).

In May 2014, Debtor asked Roger Berman for a $60,000 loan. (Aff. Ex. 5 at 6). At his deposition, Debtor testified that he told Mr. Berman that the money was needed for a business purpose and he intended to repay the loan when the transaction closed. (Aff. Ex. 5 at 8-9). Debtor admitted that he lied to Mr. Berman about the purpose of the loan. (Aff. Ex. 7 at 86, 91-92). Debtor directed the money to be wired to a bank account belonging to his live-in partner, Ling Wang. (Aff. Ex. 7 at 86 and 91). The money was to be used by her to cure delinquent mortgage payments (Aff. Ex. 7 at 89 and 91) on a property titled in her name at which they both lived with their 12-year old daughter (Aff. Ex. 7 at 43).

After the $60,000 was received, Debtor requested an additional $40,000 from Mr. Berman and misrepresented that he had two transactions pending and a closing scheduled for June 18th that would pay him in full. (Aff. Ex. 7 at 93-95). Roger Berman did not loan the $40,000, but did loan Debtor an additional $10,000, which was again wired to Ling Wang's

---

[4] The China Venture and the Hess Deal are together referred to as the "Business Ventures."

checking account.  (Aff. Ex. 7 at 96-97).  This $10,000 was not used to cure mortgage arrears. The Debtor testified that it was used to pay other bills, which have never been accounted for. (Aff. Ex. 7 at 96-97).

When Debtor filed this bankruptcy in November 2014, Debtor affirmed under penalty of perjury that all of his statements in his schedules were true and accurate to the best of his knowledge and belief.  (Aff. Ex. 3 at 43).  Debtor represented in Schedule B – Personal Property that he did not have any interest in partnerships or joint ventures and denied that he had accounts receivable.  (Aff. Ex. 3 at 25, Q.16). Debtor listed liabilities totaling $107,299; $70,000 of this amount is for an unsecured "personal loan" owed to Roger Berman.  (Aff. Ex. 3 at 33-34).  In his sworn Statement of Financial Affairs, Debtor represented that he had transferred no property within two years immediately preceding the commencement of his case.  (Aff. Ex. 3 at 46, Q. 10).  Debtor was required to list the nature, location and name of all businesses in which he was an officer, director, partner, sole proprietor, or was self-employed either full-time or part-time in a trade, profession, or other activity within six years immediately preceding the commencement of his case.  (Aff. Ex. 3 at 47, Q. 18).  In response, Debtor listed Beaudry Apartments as operating from 1993 to 2009, but listed no other businesses. [5]  (Aff. Ex. 3 at 47, qu. 18).  Debtor reiterated the truthfulness and completeness of his schedules in his sworn testimony given at the 341 Meeting. (Aff. Ex. 5 at 5).

Debtor was required to produce copies of his "2013 and 2014 Federal and State Income Tax returns and all papers, statements, and contracts related to borrowed funds or obligations

---

[5] According to Debtor's sworn deposition testimony, Beaudry Apartments consisted of all of his real estate holdings.  (Aff. Ex. 7 at 63).

incurred in 2013 and 2014," as part of a court ordered examination.  (Aff. Ex. 6).[6]  In response,

Debtor produced limited documents, which included his 2013 Federal and State tax returns and a

nineteen-page brochure relative to the China Venture. (7056-1 Stmt. ¶ 22).

### *Standard for Summary Judgment*

Fed. R. Civ. P. 56 provides, in pertinent part, that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Brown v. Eli

Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  "Where the moving party demonstrates 'the

absence of a genuine issue of material fact,' *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986),

the opposing party must come forward with specific evidence demonstrating the existence of a

genuine dispute of material fact." *Brown*, 654 F.3d at 358 (citing *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 249 (1986)).  On summary judgment, the court must "resolve all ambiguities

and draw all permissible factual inferences in favor of the party against whom summary

judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (citing *Stern v. Trustees

of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)).

"[F]ailure to oppose a motion for summary judgment alone does not justify the granting

of summary judgment. Instead, the [trial] court must still assess whether the moving party has

fulfilled its burden of demonstrating that there is no genuine issue of material fact and its

entitlement to judgment as a matter of law." *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram

Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

---

[6] The Order granting Plaintiff's motion for a Rule 2004 examination directed Debtor to produce
the documentation requested in the underlying motion filed in Debtor's main bankruptcy case.

### Denial of Discharge

The grant of a discharge under § 727 is a privilege to be enjoyed by only the "honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). The salient purpose of the Bankruptcy Code—to provide the debtor with a "fresh start"—yields to the rights of creditors in the presence of certain debtor wrongdoing. *See Grogan v. Garner*, 498 U.S. at 286-87. The extreme penalty of denial of a debtor's discharge under § 727(a) "must be construed strictly against those who object to the debtor's discharge and liberally in favor of the bankrupt." *In re Chalasani*, 92 F.3d 1300, 1310 (2d. Cir. 1996) (internal quotations omitted). The party seeking denial of discharge bears the burden of establishing each element of a § 727(a) claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. at 287.

### Discussion

#### 11 U.S.C. § 727(a)(2)(A)

In pertinent part, 11 U.S.C. § 727(a)(2)(A) provides that:

> [t]he court shall grant the debtor a discharge, unless—the debtor, with intent to hinder, delay, or defraud a creditor...has transferred...or has permitted to be transferred...—property of the debtor, within one year before the date of the filing of the petition."

It is undisputed that within one year before filing this case, Debtor permitted the $70,000 from Roger Berman to be transferred to his live-in partner's bank account (the "Wang Transfer"). Ling Wang used $60,000 of these funds to cure mortgage arrears owing on the home in which both she, the Debtor and their 12-year old daughter reside. The remaining $10,000 has not been accounted for. Debtor admits to having lied to Roger Berman about the purpose of the loan and the ability to repay him and falsely testifying about the same. From these facts, the court readily infers Debtor's intent to defraud his creditor, Roger Berman. *Salomon v. Kaiser (In re Kaiser)*,

722 F.2d 1574, 1583 (2d. Cir. 1983) (holding that "the transfer of property by the debtor to his spouse while insolvent, while retaining use and enjoyment of the property, is a classic badge of fraud").

The Wang Transfer presents several badges of fraud identified by the Second Circuit in *Kaiser*. Namely, (i) "the family, friendship or close associate relationship between the parties; [(ii)] the retention of possession, benefit or use of the property in question; [and (iii)] the financial condition of the party sought to be charged both before and after the transaction in question." *Id.* (citing *In re May*, 12 B.R. 618, 627 (Bankr. N.D.Fla. 1980)).  Here, (i) Debtor loaned the $70,000 to Ling Wang, a close associate, $60,000 of which was used to cure mortgage arrears on the residence where they live and $10,000 of which has not been accounted for; (ii) Debtor retained possession of and the benefit and use of the residence while living "on cash" and (iii) Debtor and Ling Wang were each in poor financial condition both before and after the transaction.  Debtor filed for bankruptcy seven months after giving the loan to Ling Wang and Ling Wang was a debtor in a separate chapter 13 bankruptcy case at the time of the loan.

From these facts, the court infers the fraud necessary to support Plaintiff's claim. "Evidence of fraud is conclusive enough to support summary judgment in a § 727(a)(2)(A) action when it yields no plausible conclusion but that the debtor's intent was fraudulent." *In re Marrama*, 445 F.3d 518 (1st Cir. 2006).  The court finds that Plaintiff has demonstrated by a preponderance of the evidence that Debtor, with intent to defraud Roger Berman, permitted to be transferred, within one year of his petition date, $70,000 to Ling Wang, thereby satisfying the elements of a § 727(a)(2)(A) claim.

### 11 U.S.C. § 727(a)(2)(B)

If the debtor "with intent to hinder, delay, or defraud a creditor…concealed…property of the estate, after the date of the filing of the petition," a discharge may be denied.    11 U.S.C. § 727(a)(2)(B).    It is undisputed that Debtor failed to disclose on his sworn Schedule B the account receivable owing from Ling Wang to him as a result of his transfer of $70,000 to her (the "Wang Receivable).    Thus, Debtor concealed property of the estate after filing bankruptcy. Based upon the factual circumstances of the Wang Receivable, the court infers Debtor's intent to defraud creditors.    On Schedule F Debtor listed the $70,000 loan from Roger Berman as a general unsecured debt subject to discharge yet failed to disclose the corresponding Wang Receivable of the same amount as a potential asset from which creditors could be paid.    Plaintiff has established his § 727(a)(2)(B) claim by a preponderance of the evidence.

### 11 U.S.C. § 727(a)(3)

A court may deny a debtor a discharge under § 727(a)(3) if "the debtor has…failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."    The purpose of this section is to provide creditors, the trustee and the court with a full and accurate picture of the debtor's financial condition and history so as "to test the completeness of the disclosure requisite to a discharge." *Meridian Bank v. Alten,* 958 F.2d 1226, 1230 (3d Cir.1992).    The Second Circuit enunciated the standard for disclosure and record keeping in *In re Underhill*:

> The law is not unqualified in imposing a requirement to keep books or records, and it does not require that if they are kept they shall be kept in any special form of accounts. It is a question in each instance of reasonableness in the particular circumstances. Complete disclosure is in every case a condition precedent to the granting of the discharge, and if such a disclosure is not possible without the keeping

of books or records, then the absence of such amounts to that failure to which the act applies.

*In re Underhill*, 82 F.2d 258, 259-60 (2d Cir. 1936) *cert. denied*, 299 U.S. 546 (1936) (internal citations omitted).   Whether to deny a discharge for the debtor's failure to keep or preserve adequate financial records has been found subject to the following test: "whether there is available written evidence made and preserved from which debtor's present financial condition, and his recent business transactions for a reasonable period in the past, may be ascertained with substantial completeness and accuracy." *State Bank of India v. Sethi (In re Sethi)*, 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000).

From the absence of documents and records, the court concludes that it is impossible to properly assess Debtor's recent business transactions and financial condition with any degree of completeness or accuracy.

The undisputed facts establish that Debtor borrowed $70,000 from Roger Berman. Debtor testified that he provided brokering services in connection with the Hess Deal and acted as a consultant for Roger Berman relative to the China Venture.  He stated that he had incurred between $1,500 and $2,000 for expenses for which he expected reimbursement.

In response, however, to Plaintiff's demand for production of Debtor's 2013 and 2014 tax returns and all papers, statements, and contracts relating to borrowed funds or obligations which Debtor incurred in calendar years 2013 and 2014, Debtor provided only his 2013 tax returns and a single nineteen-page brochure relative to the China Venture.   As to the $70,000 loan from Roger Berman and the corresponding Wang Receivable, there is limited proof.  No bank records of Ling Wang evidencing the deposit and disbursements of the $70,000 deposited into her accounts were produced. There are no records to track the Debtor's cash basis operations and no accounting for the $10,000 that was not used to cure mortgage arrears. (Aff. Ex. 7 at 94-97).  No

records were produced to support the expenditure or reimbursement of costs attributable to the Business Ventures. Finally, other than the nineteen-page brochure, no records were produced relative to the Business Ventures. From the tendered records, it is impossible to ascertain "with substantial completeness and accuracy" the Debtor's "present financial condition and his recent business transactions" within a reasonable lookback period of time prior to filing. *In re Sethi*, 250 B.R. at 838. Debtor has offered no justification for his failure to keep adequate records and the court finds no justification from the record.

Based upon the undisputed facts, the court finds that Plaintiff has satisfied his burden under § 727(a)(3) for denial of Debtor's discharge.

### *11 U.S.C. § 727(a)(4)*

The making of "a false oath or account" is grounds for denial of a discharge under § 727(a)(4). To prevail on this claim, Plaintiff must establish: "that (1) the [Debtor] made a statement under oath; (2) the statement was false; (3) the [Debtor] knew that the statement was false; (4) the [Debtor] made the statement with fraudulent intent; and (5) that the statement related materially to the bankruptcy case." *In re Dubrowsky*, 244 B.R. 560, 572 (E.D.N.Y. 2000) (internal citations omitted). Statements in the Debtor's filed schedules and statement of financial affairs as well as the Debtor's testimony at the 341 meeting and his Rule 2004 deposition constitute statements under oath for purposes of § 727(a)(4)(A). *In re Moreo*, 437 B.R. 40, 60 (E.D.N.Y. 2010). "Both omissions and affirmative misstatements qualify as false statements under § 727(a)(2)(4)." *Id.*

#### *Debtor's False Statements Under Oath*

Debtor omitted from his Schedule B–Personal Property his interest in the Wang Receivable. Debtor further omitted the $1,500 to $2,000 account receivable due from Mr.

10

Berman for reimbursement of his out-of-pocket costs.  Either Debtor lied under oath at the 341

Meeting about incurring and expecting reimbursement of those costs, or he lied by omitting the

account receivable from his Schedule B.

Debtor also omitted from his Statement of Financial Affairs the Wang Transfer and failed

to disclose the Business Ventures. At his deposition, Debtor confirmed the foregoing omissions

that constitute false oaths under § 727(a)(4).  Thus, Plaintiff has established that Debtor made

false statements under oath.

### *Debtor's Knowledge that the Statements were False*

Debtor's Schedule B did not disclose the Wang Receivable and his Statement of

Financial Affairs did not disclose the Wang Transfer or the Business Ventures.  Debtor's

testimony at his 341 Meeting and deposition concerning the Wang Loan and his Business

Ventures indicates Debtor knew the truth of the matters.  Debtor does not dispute that he made

the Wang Transfer yet he failed to disclose it and swore to the accuracy of all of his schedules,

including Schedule B, and Statement of Financial Affairs.  Thus, the court finds that Plaintiff has

established Debtor's requisite knowledge.

### *Debtor's Fraudulent Intent*

The element of fraudulent intent may be established by "evidence of either (1) actual

intent to deceive or (2) reckless disregard for the truth." *In re United General Title Ins. Co. v.

Karanasos (In re Karanasos)*, 2014 WL 4388277 (E.D.N.Y.) (citing *Adler v. NG (In re Adler)*,

395 B.R. 827, 843 (E.D.N.Y. 2008)).  A reckless indifference for the truth supports a finding of

fraud.  *Diorio v. Kreisler-Borg Const. Co. (In re Diorio)*, 407 F. 2d 1330 (2d. Cir. 1969).

However, fraudulent intent will not be found where a false statement is the result of carelessness

or ignorance.  *Id.; In re Handel*, 266 B.R. 585, 590 (Bankr. S.D.N.Y. 2001).  "As the Second

Circuit has recognized, fraudulent intent may be inferred from a series of incorrect statements contained in the schedules." *In re Casado*, 187 B.R. 446 (Bankr. E.D.N.Y. 1995) (citing *In re Diorio*, 407 F.2d at 1331; *In re Kaiser*, 722 F.2d at 1583, n.4)).

Debtor's failure to disclose (i) the Wang Transfer, (ii) Wang Receivable and (iii) his Business Ventures constitute a series of omissions. The court is not inclined to view the Debtor's failures to disclose assets and transfers as the result of his carelessness or ignorance. Not only is Debtor represented by competent counsel in this case, but Debtor is no stranger to bankruptcy or the required disclosures in this, his fifth bankruptcy case. Debtor is highly educated with a college degree and a business background. For these reasons, the court finds that Debtor did not have the required regard for the accuracy and detail of the information to which he swore and infers from the undisputed facts that Debtor acted with fraudulent intent.

### *Material Nature of the False Oaths*

A false oath is material to the bankruptcy case if it is "related to the debtor's business transactions, concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property." *In re Gardner*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008) (internal citations omitted). Debtor's false oath—the omission of the Wang Receivable—constitutes a failure to disclose an asset that could potentially be pursued by the chapter 7 trustee for the benefit of the Debtor's estate and creditors. Similarly, the omission of the Wang Transfer shielded from the chapter 7 trustee's view the potential for recovery of the Wang Receivable. The other omissions relating to the Debtor's Business Ventures denied Debtor's creditors and the chapter 7 trustee the full disclosure of the Debtor's financial condition to which they were entitled in order to be able to ascertain whether assets exist from which the estate might benefit. For all of these reasons, the court finds that the Debtor's false oaths are material.

12

Plaintiff has established each of the elements of his § 727(a)(4) claim by a preponderance of the evidence.

***Conclusion***

The court finds that there is no genuine issue as to any material fact and fully grants Plaintiff's Motion for summary judgment.   A separate judgment denying Debtor's discharge under 11 U.S.C. § 727(a)(2)(A) and (B), (3) and (4) shall be entered.


So Ordered.

Dated:  April 8, 2016
      Syracuse, New York

Margaret Cangilos-Ruiz
United States Bankruptcy Judge

13